Kenneth W. Donnelly
Assistant Chief Litigation Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-5949
Telephone: (202) 551-4946
Email: donnellyk@sec.gov
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                       :
SECURITIES AND EXCHANGE                :
COMMISSION,                            :
                                       :
           Plaintiff,                  :    14 Civ. _____ (    )
                                       :
              v.                       :    ECF CASE
                                       :
JOHN CAMPANI,                          :
                                       :
           Defendant.                  :
_____:

# COMPLAINT

Plaintiff Securities and Exchange Commission ("SEC" or "Commission"), 100 F Street, N.E., Washington, DC 20549, brings this action against Defendant John Campani, 1392 West Island Club Square, Vero Beach, FL 32963, and alleges:

## SUMMARY

1. This case involves the illegal tipping of material nonpublic information ("inside information") by George H. Holley, the co-founder of Home Diagnostics, Inc. ("HDI"), who was Chairman of HDI's Board of Directors. Between December 2009 and January 2010, Holley tipped Defendant, a longtime friend and former co-worker, information about an impending acquisition of HDI by another company. Although Holley owed a fiduciary duty to HDI and its shareholders to maintain the confidence of

1

the inside information, he nevertheless provided the information to Defendant with the intent that he purchase HDI stock on the basis of his tip.  Defendant subsequently purchased HDI stock on the basis of the inside information from Holley.

2. On February 3, 2010, HDI publicly announced that it had signed a merger agreement with Nipro Corporation ("Nipro") whereby Nipro would acquire all of HDI's outstanding common stock in a tender offer for $11.50 per share.  The announcement caused an eighty-nine percent increase in the price of HDI's common stock.

3. Following the merger announcement, Defendant sold his HDI shares, realizing a total profit of approximately $26,700.

4. By engaging in the trading scheme describe herein, Defendant violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

5. By this action, the Commission seeks: (a) to enjoin Defendant from further violating the securities laws in the future; (b) to compel the disgorgement of his unlawful profits with prejudgment interest; and (c) to impose a civil monetary penalty.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e), 78u-1 and 78aa].

7. Venue is proper under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Defendant has consented to venue in this forum.

8. Defendant, directly or indirectly, made use of the means or instruments of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein.

## DEFENDANT

9. Defendant John Campani, age 74, resides in Vero Beach, Florida. Campani is a longtime friend of George Holley, the former Chairman of the Board of Directors of HDI. Campani is also a former employee of HDI.

## RELEVANT ENTITIES

10. Home Diagnostics, Inc. was a Delaware corporation with its principal place of business in Fort Lauderdale, Florida. HDI manufactured and marketed blood glucose monitoring systems and disposable supplies for diabetics. Prior to March 12, 2010, HDI was traded on NASDAQ under the symbol "HDIX." On February 3, 2010, HDI announced a merger agreement with Nipro whereby Nipro would acquire HDI via tender offer. On March 15, 2010, HDI merged with a wholly-owned subsidiary of Nipro.

11. Nipro Corporation is a Japanese company that manufactures and distributes medical devices and pharmaceutical products. Nipro's stock is traded on the Tokyo Stock Exchange and Osaka Stock Exchange.

## FACTS

**I.  Holley's Access to Material Nonpublic Information Regarding the Merger**

12. On or about June 12, 2009, representatives of Nipro met with members of HDI's management to discuss Nipro's interest in potentially acquiring HDI.

13. Thereafter, throughout the summer and fall of 2009, the companies engaged in confidential merger negotiations and took substantial steps towards the commencement

of a tender offer. These included the retention of a consulting firm by HDI; multiple high-level meetings between senior representatives of the two companies; a due diligence review; the sharing of nonpublic financial information; the execution of a confidentiality agreement; and the drafting of a merger agreement that provided for a tender offer. All of these substantial steps had been completed or initiated by December 22, 2009.

14. On or about December 21, 2009, Nipro formally offered to acquire HDI for $11.50 per share. On or about December 22, 2009, the HDI board, with Holley participating, deemed the offer adequate and authorized management to proceed with the drafting of a merger agreement. The companies spent most of January 2010 finalizing the details of the merger agreement.

15. On or about February 2, 2010, the HDI board approved the final merger agreement with Nipro. Under the terms of the agreement, Nipro would acquire all of the outstanding shares of HDI common stock at a cash purchase price of $11.50 per share, representing an approximately ninety percent premium to the closing price of HDI's common stock on February 2, 2010, and an approximately eighty-three percent premium to HDI's average closing price for the preceding ninety days.

16. In his capacity as HDI's Chairman of the Board of Directors, Holley received a stream of nonpublic information beginning in at least June 2009 concerning the merger negotiations between HDI and Nipro.

17. Between August 4, 2009, and February 2, 2010, Holley attended at least seventeen meetings at which the potential merger between HDI and Nipro was discussed.

18. Between December 22, 2009 and January 19, 2010, during which period Holley was tipping various of his friends and relatives to inside information, Holley

4

attended at least seven board meetings at which the status of the merger negotiations was discussed. For example, Holley attended a December 22, 2009 board meeting at which HDI's board authorized HDI's management to begin the drafting of a merger agreement on the basis of Nipro's proposed purchase price of $11.50 per share.

19. In addition to attending board meetings, Holley received numerous documents between August 2009 and January 19, 2010 containing nonpublic information relating to the potential merger. Holley received many such documents in December 2009 and early-January 2010. For example, on December 4, 2009, and December 21, 2009, Holley received copies of offer letters from Nipro offering to purchase HDI for $10.50 per share and $11.50 per share respectively. In addition, on January 1, 2010, and January 12, 2010, Holley received drafts of a proposed merger agreement between HDI and Nipro.

20. Holley knew, or was reckless in not knowing, that as Chairman of the Board of Directors of HDI he had a fiduciary duty to maintain the confidentiality of all material, nonpublic information that he received relating to HDI. Holley was expressly made aware that he had a duty to maintain the confidentiality of material, nonpublic information that he received concerning HDI. For example, on or about March 11, 2009, HDI's General Counsel sent a memorandum to all members of the HDI board, including Holley, which warned them that material information about the company that had not been publicly disseminated should not be provided to anyone who was not required to have such information, and that there were severe penalties for violating this restriction.

## II.   Holley's Tipping and the Resulting Trading by Defendant

21. In or about December 2009 and early January 2010, Holley and Defendant spoke at least twice over the telephone and Holley tipped Defendant to inside information

about the proposed merger between HDI and Nipro and strongly recommended that Defendant purchase HDI stock. In tipping Defendant, Holley received a personal benefit by conferring a gift upon a friend and business relation.

22. On the basis of the information supplied by Holley, Defendant purchased 5,266 shares of HDI common stock between January 5 and January 12, 2010 for his own benefit. On February 3, 2010, Defendant sold all 5,266 HDI shares, realizing a profit of approximately $26,700.

## FIRST CLAIM FOR RELIEF

### (Violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5])

23. Paragraphs 1 through 22 are hereby realleged and incorporated by reference, as though fully set forth herein.

24. As described above, Defendant possessed and used material, nonpublic information received from Holley to purchase 5,266 shares of HDI securities. Defendant knew, or was reckless in not knowing, that the information from Holley was material, nonpublic information, and he knew or had reason to know that it was provided to him in breach of Holley's fiduciary duty and duties of trust or confidence to HDI.

25. By his conduct described above, Defendant, in connection with the purchase or sale of securities, by the use of any means or instruments of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c)

engaged in acts, practices, or course of business which operated or would operate as a fraud or deceit upon any persons, including purchasers or sellers of securities.

26.     By engaging in the conduct described above, Defendant violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## SECOND CLAIM FOR RELIEF

### (Violations of Exchange Act Section 14(e) [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3])

27.     Paragraphs 1 through 26 are hereby realleged and incorporated by reference, as though fully set forth herein.

28.     Before the public announcement of the tender offer for HDI, and after a substantial step or steps to commence the tender offer were taken, Defendant purchased HDI securities while in possession of material information relating to the tender offer and while knowing or having reason to know that the information he possessed was nonpublic and had been acquired directly or indirectly from the offering company, the issuer, or any officer, director, partner, or employee, or other person acting on behalf of the offering company or issuer.

29.     By reason of the conduct described above, Defendant violated, and unless enjoined will again violate, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 [17 C.F.R. § 240.14e-3] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests a final judgment:

A.      Permanently enjoining Defendant from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17

C.F.R. § 240.10b-5] and Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3];

    B.    Ordering Defendant to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this complaint;

    C.    Ordering Defendant to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

    D.    Granting such other and further relief as the Court deems just and appropriate.

Dated: May 6, 2014

| Of Counsel: | Respectfully submitted, |
|---|---|
| Antonia Chion | s/ Kenneth W. Donnelly |
| Yuri B. Zelinsky | _____ |
| Jason Litow | Kenneth W. Donnelly |
| | Assistant Chief Litigation Counsel |
| Local Counsel Designated | 100 F Street, N.E. |
| Pursuant to L.Civ.R. 101.1(f): | Washington, D.C. 20549-5949 |
| | Telephone: (202) 551-4946 |
| Paul A. Blaine | Facsimile:  (202) 772-9282 |
| Chief, Civil Division | Email: donnellyk@sec.gov |
| United States Attorney's Office | |
|  for the District of New Jersey | Attorney for Plaintiff |
| 401 Market Street, 4th Floor | Securities and Exchange Commission |
| Camden, NJ  08101 | |
| Telephone: (856) 757-5412 | |
| Email: paul.blaine@usdoj.gov | |